<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CASE MEDICAL, INC., <br><br>             Plaintiff, <br><br>        v. <br><br>ROCK CITY LOGISTICS, *et al.*, <br><br>            Defendants. | Case No. 2:23-cv-02954 (BRM) (JBC) <br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant Saia Motor Freight Line, LLC's[1] ("Saia") Motion to Dismiss Counts Two through Eight of Plaintiff Case Medical, Inc.'s ("Plaintiff") First Amended Complaint (ECF No. 4 ("FAC")), pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 8 ("Saia's Motion")). Plaintiff filed an opposition (ECF No. 17), and Saia filed a reply (ECF No. 18). Also before the Court is Defendant Rock City Logistics, LLC's ("Rock City," and collectively with Saia, "Defendants") Motion to Dismiss Plaintiff's FAC (ECF No. 4), pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 12 ("Rock City's Motion")). Plaintiff filed an opposition (ECF No. 16), and Rock City filed a reply (ECF No. 19). Having reviewed the submissions filed in connection with these two motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Saia's Motion (ECF No. 8) is **GRANTED**, and Rock City's Motion (ECF No. 12) is **GRANTED IN PART and DENIED IN PART**.

---

[1] Saia's counsel notes Saia was improperly identified as "Saia LTL Freight" in the Complaint but is correctly identified as "Saia Motor Freight Line, LLC." (*See* ECF No. 1.)

I.   **BACKGROUND**[2]

For the purpose of these motions to dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court may also consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This action arises out of damage to Plaintiff's spot-welding machine that occurred during transport from New Jersey to Tennessee. (*See generally* ECF No. 4.) Plaintiff is a New Jersey manufacturing facility with its principal office in Bloomfield, New Jersey. (*Id.* ¶ 2.) Saia is a freight company headquartered in Johns Creek, Georgia. (*Id.* ¶ 5.) Rock City is "a transportation or logistics company" headquartered in Southfield, Michigan. (*Id.* ¶ 3.) Priority1, Inc. ("Priority1"[3]) is "a transportation or logistics company" headquartered in North Little Rock, Arkansas. (*Id.* ¶ 4.)

Plaintiff's manufacturing business requires using special machinery, including a spot-welding machine, to operate. (*Id.* ¶¶ 8–9.) On or about June 14, 2022, Plaintiff reached out to Rock City to obtain a quote for the cost to transport its "Techna MFDC Welder Model TE-6128 spot welding machine from New Jersey to Tennessee." (*Id.* ¶¶ 11–12.) Rock City was informed of the fragility and importance of the spot-welding machine and that it would require "specialized

---

[2] The factual background is taken from and limited to the allegations in the FAC. (ECF No. 4.) Plaintiff's briefs filed in opposition to Saia's Motion and Rock City's Motion (ECF Nos. 16, 17) contain additional factual allegations, but "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

[3] Defendant Priority1 has not yet appeared in this action.

handling." (*Id.* ¶¶ 13, 18.) In response, Rock City provided multiple quotes to Plaintiff including one quote from Saia. (*Id.* ¶ 14.) One of Rock City's employees and/or authorized agents "represented to Plaintiff that Defendant Saia was 'a very good carrier, honestly probably one of the best ones out there.'" (*Id.* ¶ 15.) Based on Rock City's representations and "unequivocal recommendations" regarding Saia, Plaintiff selected Saia to be the carrier to transport its spot-welding machine to Tennessee. (*Id.* ¶¶ 19–20.)

In consideration of Plaintiff's agreement to pay certain freight charges, Rock City and Saia agreed to transport Plaintiff's spot-welding machine "in good order and condition for delivery on June 16, 2022." (*Id.* ¶ 39.) Rock City told Plaintiff "it would handle all aspects of the transportation contract" and that it would not worry about obtaining additional insurance coverage for the transport because Saia is "a very good and reputable carrier." (*Id.* ¶¶ 16–17.) Plaintiff decided not to obtain supplemental insurance coverage based on Rock City's representations about Saia's "quality service and insurance coverage." (*Id.* ¶¶ 20, 30.) The Bill of Lading[4] for the transport of Plaintiff's spot-welding machine (attached as Exhibit A to the FAC) lists Saia as the "Carrier" and Priority1 as the "3rd Party Bill To."[5] (*Id.* at Ex. A.) Rock City is not listed anywhere on the Bill of Lading. (*See id.*)

---

[4] The Court can consider the Bill of Lading as a "document *integral to or explicitly relied upon* in the complaint." *See In re Burlington*, 114 F.3d at 1426 (citation omitted).

[5] It is unclear from the allegations in the FAC as to when Plaintiff received a copy of the Bill of Lading. (*Compare* ECF No. 4 ¶¶ 24–25 (alleging that neither Rock City nor Saia "provide[d] Plaintiff with a copy of the Bill of Lading at the time the spot-welding machine was taken into possession"), *with id.* ¶ 38 ("On June 14, 2022, Plaintiff tendered the shipment to Defendant Saia in good order and condition, and Defendant Saia issued a Bill of Lading acknowledging receipt of the shipment for transport.").)

On June 14, 2022, Plaintiff tendered its spot-welding machine to Saia[6] "perfectly intact" and "in good order and condition" for transport. (*Id.* ¶¶ 22–23, 38.) Saia failed to deliver Plaintiff's spot-welding machine in good order and condition. (*Id.* ¶ 40.) During Saia's transport of Plaintiff's spot-welding machine, the machine "was extensively damaged as a result of Defendant Saia, through its employees or agents, recklessly or carelessly causing the machine to be mishandled during the picking up, transporting, unloading and/or delivery." (*Id.* ¶ 27.) Upon arrival, a non-party named TJ Snow inspected the shipment and determined the spot-welding machine was a total loss. (*Id.* ¶ 28.) Plaintiff's cost to obtain a replacement Techna MFDC Welder Model TE-6128 spot-welding machine was approximately $55,000. (*Id.* ¶ 29.) In a letter dated September 27, 2022, Plaintiff provided notice of this loss to Rock City and demanded it reimburse the $55,000 cost. (*Id.* ¶ 42.) Through subsequent correspondence, Saia was also put on notice of Plaintiff's loss, but Defendants have refused to pay Plaintiff the claimed $55,000 amount. (*Id.* ¶¶ 43–44.)

Plaintiff also alleges that before the shipment, and without Plaintiff's knowledge or consent, Rock City "may have subcontracted and/or brokered the shipment to Defendant Priority1 thereby confusing Plaintiff as to who was acting as a 'carrier' of the shipment, as defined in 49 U.S.C. § 13102(3), and who was acting as a 'broker' of the shipment, as defined in 49 U.S.C. § 13102(2)." (*Id.* ¶ 21.) Plaintiff further alleges Priority1 "wrongfully accepted payment for Plaintiff's claim as part of an effort [to] waive Plaintiff's rights" and that Rock City and Priority1

---

[6] Plaintiff alleges it tendered its spot-welding machine to Saia (ECF No. 4 ¶ 38) but elsewhere alleges it tendered its machine to "Defendant Rock City and/or Defendant Saia" (*id.* ¶ 22). Based on Plaintiff's other allegations in the FAC (*see id.* ¶¶ 25–27, 37, 40–41, 48, 67) and the Bill of Lading attached as Exhibit A to the FAC (which does not mention Rock City), the Court understands Plaintiff tendered its machine to Saia, not to Rock City, for transport.

executed documents purporting to resolve Plaintiff's claim regarding the damaged shipment but that they "did not have authority to act on Plaintiff's behalf" to do so. (*Id.* ¶¶ 32, 83–84.)

Plaintiff alleges it suffered monetary damages including the value of its spot-welding machine, as well as lost profits and other damages "[a]s a direct and proximate result of Defendants' misrepresentations, reckless, and negligent conduct[,]" and actions and inactions. (*Id.* ¶¶ 34–35.) Plaintiff contends Defendants are "vicariously liable for the damages proximately caused by their employees and/or agents within the scope of their employment and/or agency." (*Id.* ¶ 33.) Plaintiff seeks "[c]ompensatory, consequential, and incidental damages, plus lost profits"; "reasonable attorney's fees, filing fees, other expenses and cost of suit"; and "such other relief as the [C]ourt deems equitable and just" against all defendants, both jointly and severally. (*See id.* ¶¶ 36–87.)

On or about April 13, 2023, Plaintiff filed a Complaint against Defendants in the Superior Court of New Jersey, Essex County, Law Division, Civil Part, captioned *Case Medical, Inc. v. Rock City Logistics, and Saia LTL Freight*, Docket No. L-2477-23 (the "State Court Action"). (ECF No. 1-1.) On May 31, 2023, Saia filed a Notice of Removal, removing the State Court Action to this Court on the basis of federal question jurisdiction. (ECF No. 1.) Saia asserts the Notice of Removal was timely filed within thirty days of purported service. (*Id.* at 2.) On June 7, 2023, Saia filed a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (ECF No. 3.) On June 19, 2023, Plaintiff filed the FAC against Defendants and Priority1 asserting the following causes of action: (1) "'Carmack Amendment' Claim against Motor Carrier, 49 U.S.C. § 14706" (Count One); (2) Negligence (Count Two); (3) Breach of Warranty (Count Three); (4) Negligent Misrepresentation (Count Four); (5) Promissory Estoppel (Count Five); (6) Breach of Contract (Count Six); (7) Breach of Implied Covenant of Good Faith

and Fair Dealing (Count Seven); and (8) Tortious Interference (Count Eight). (ECF No. 4.) On June 20, 2023, Saia's motion to dismiss the original complaint was administratively terminated in light of the filing of the FAC. (ECF No. 6.)

On June 30, 2023, Saia moved to dismiss Counts Two through Eight of the FAC pursuant to Rule 12(b)(6). (ECF No. 8.) On August 7, 2023, Plaintiff filed an opposition. (ECF No. 17.) On August 14, 2023, Saia filed a reply. (ECF No. 18.)

On July 10, 2023, Rock City moved to dismiss the FAC pursuant to Rule 12(b)(6). (ECF No. 12.) On August 7, 2023, Plaintiff filed an opposition. (ECF No. 16.) On August 14, 2023, Rock City filed a reply. (ECF No. 19.)

On September 14, 2023, this action was reassigned to the undersigned from The Honorable John Michael Vazquez, U.S.D.J. (ret.). (ECF No. 21.)

## II.   LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (alteration in original) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative

level[.]" *Twombly*, 550 U.S. at 555 (citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pleaded; it must include "factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *See id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant[.]" *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the

claim is facially plausible, "allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 570). The Supreme Court's ruling in *Iqbal* emphasizes that plaintiffs must show that the allegations of their complaints are plausible. *See id.* at 670.

While courts generally may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *See In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

## III.   DECISION

### A.  Saia's Partial Motion to Dismiss[7]

Saia argues Plaintiff's state law claims in Counts Two through Eight of the FAC should be dismissed for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6). (ECF No. 8-1.) Specifically, Saia argues the FAC fails to state a claim because Plaintiff's state law claims—*i.e.*, negligence, breach of warranty, negligent misrepresentation, promissory estoppel,

---

[7] Saia moves to dismiss all but one count of the FAC—Saia does *not* seek to dismiss Count One of the FAC, which alleges a claim under the Carmack Amendment. (*See* ECF No. 8; ECF No. 8-1 at 11; ECF No. 4 ¶¶ 36–45.) With respect to Count One, Saia states Plaintiff "properly alleges that Saia is a motor carrier that transported goods in interstate commerce, and Plaintiff properly alleges a Carmack Amendment claim against Saia pursuant to 49 U.S.C. § 14706." (*Id.* at 1 (citing ECF No. 4 ¶ 37).)

breach of contract, breach of good faith and fair dealing, and tortious interference with contract—are all preempted by the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706 ("Carmack Amendment") and the Federal Aviation Administration Authorization Act, 49 U.S.C. § 14501 ("FAAAA"). (*Id.* at 1–2; *see also id.* at 2–11; ECF No. 18 at 1–14.) Plaintiff, however, contends its state law claims are not preempted by the Carmack Amendment or the FAAAA. (ECF No. 17 at 5–14.)

### i.   Carmack Amendment Preemption

Saia contends that under Supreme Court precedent, the Carmack Amendment preempts all state law claims "arising out of loss or damage to property transported in interstate commerce[.]" (ECF No. 8-1 at 3–4 (citing *Adams Express Co. v. Croninger*, 226 U.S. 491, 505–06 (1913)).) Saia asserts the federal appellate courts including the United States Court of Appeals for the Third Circuit ("Third Circuit") have "unanimously and repeatedly held that the Carmack Amendment's broad scope preempts all state law claims, regardless of whether they contradict or supplement Carmack remedies." (ECF No. 8-1 at 5 (citing cases).) Saia asserts case law "establish[es] that any state law causes of action that arise from or relate in any way to alleged damage to or loss of freight transported by a common carrier in interstate transport . . . are preempted by the Carmack Amendment." (*Id.* at 10.) Accordingly, Saia submits the Carmack Amendment preempts Plaintiff's state law causes of action in Counts Two through Eight of the FAC and the Court should dismiss those claims. (*Id.* at 1–2.)

In opposition, Plaintiff argues its claims are not preempted by the Carmack Amendment and therefore Saia's Motion should be denied. (ECF No. 17 at 5–12.) Plaintiff asserts "[t]he Third Circuit has not mandated broad preemption of all state law claims under the Carmack Amendment . . . in all factual contexts" and "has yet to address the question of whether the Carmack

Amendment has complete preemptive effect." (*Id.* at 6–7 (quoting *Rising Up Garden Ctr. v. Online Freight Servs., Inc.*, Civ. A. No. 16-02341, 2016 WL 3546582, at *2 (D.N.J. June 29, 2016)).) Plaintiff also states preemption is an affirmative defense that defendants must prove. (*Id.* at 7.) Additionally, Plaintiff contends Rock City created confusion over who was the carrier and who was the broker for purposes of whether the Carmack Amendment applies. (*See id.* at 9.)

In reply, Saia maintains Plaintiff's state law claims should be dismissed because (1) they are preempted by the Carmack Amendment and the FAAAA; (2) the FAC "contains no factual allegations that Saia operated other than as a motor carrier and damaged Plaintiff's freight while operating in that capacity"; (3) Plaintiff does not allege any "'separate or distinct' harm or conduct" unrelated to, or independent from, the delivery, loss, or damage to goods; and (4) even assuming, *arguendo*, Counts Two through Eight are not preempted, the Court should dismiss those Counts as against Saia because Plaintiff failed to allege sufficient facts to support those claims. (ECF No. 18.) Saia asserts it is undisputed that the Bill of Lading identifies Saia as a carrier and that Plaintiff's allegations in the FAC show Saia acted solely as a carrier, and not as a broker or anything else. (*Id.* at 1–5.) Saia contends it is a carrier for purposes of the Carmack Amendment and therefore it cannot also be a broker because "an entity cannot be both a motor carrier and a broker in relation to the shipper for the same shipment." (*Id.* at 3.)

Saia concedes other courts outside of the Third Circuit "have recognized that certain state law causes of action escape Carmack preemption if they allege 'conduct separate and distinct from the delivery, loss of, or damage to goods' or allege 'harm that is independent from the loss or damage to goods'" but notes that the Third Circuit has not yet weighed in on which of these tests would apply. (*Id.* at 5.) However, Saia asserts Plaintiff would not be able to avoid Carmack Amendment preemption under either test because Plaintiff's allegations fail to allege any "separate

and distinct conduct from the damage to the goods" and likewise fail to allege any "harm separate or distinct from the loss or damage to its freight." (*Id.* at 5–9.) Rather, Saia states any relief Plaintiff seeks relates to the alleged damage to their spot-welding machine. (*Id.* at 8–9.) Accordingly, Saia argues the Court should find that Counts Two through Eight of Plaintiff's FAC are preempted by the Carmack Amendment and dismiss those claims as against Saia. (*Id.* at 9, 14.)

The Carmack Amendment governs interstate shipping. *See Certain Underwriters at Int. at Lloyds of London v. United Parcel Serv. of Am., Inc.*, 762 F.3d 332, 335 (3d Cir. 2014). Under the Carmack Amendment, "[t]he general rule is that an interstate carrier is strictly liable for damages up to 'the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) [certain intermediary carriers].'" *Id.* (alteration in original) (citing 49 U.S.C. § 14706(a)(1)). Federal courts of appeals "have consistently held that the Carmack Amendment is the 'exclusive cause of action for interstate-shipping contract [and tort] claims alleging loss or damage to property.'" *Id.* at 336 (alteration in original) (quoting *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 688–90 (9th Cir. 2007)); *see also Rising Up Garden Ctr.*, 2016 WL 3546582, at *2 ("The Carmack Amendment provides the exclusive remedy for claims that seek damages arising out of the interstate transportation of goods by a common carrier. Therefore, while [p]laintiffs may have asserted state law claims in their complaint, their suit 'is purely a creature of federal law' such that the state law claims are transformed into federal claims under the Carmack Amendment.").

Courts "have also unanimously held that the Carmack Amendment 'preempts all state or common law remedies available to a shipper against a carrier for loss or damage to interstate shipments.'" *Lloyds of London*, 762 F.3d at 336 (quoting *N. Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.*, 89 F.3d 452, 456 (7th Cir. 1996)). Civil actions can be brought under the Carmack

Amendment against a "delivering carrier" and/or "the carrier alleged to have caused the loss or damage[.]" 49 U.S.C. §§ 14706(d)(1), (d)(2). "The modern Carmack Amendment still preempts all state regulation regarding the loss or injury to goods in commerce, so that the shipper's recourse is only against carriers." *AMG Res. Corp. v. Wooster Motor Ways, Inc.*, 796 F. App'x 96, 100 (3d Cir. 2020). "[T]he [Carmack] Amendment's preemptive reach has been applied to a wide range of state and common law claims that arise from a carrier's failure to meet its obligations under a contractual agreement with a shipper." *Kotick v. Atlas Van Lines, Inc.*, Civ. A. No. 18-11916, 2019 WL 5388163, at *5 (D.N.J. Oct. 22, 2019) (citing cases). Courts "have dismissed state and common law claims for breach of contract, negligence, conversion and every other action for loss of or injury to a shipment of goods" as being preempted by the Carmack Amendment. *Lloyds of London*, 762 F.3d at 336; *see also id.* n.3 (citing cases).

For example, one court dismissed plaintiff's common law causes of action including breach of contract, breach of bailment, negligence, and breach of the covenant of good faith and fair dealing as preempted by the Carmack Amendment, finding those causes of action all arose from defendant's failure to deliver materials in accordance with the parties' bill of lading[,]" and stating "courts in the Third Circuit have historically and regularly dismissed such common law claims on grounds that they fall squarely within the Carmack Amendment's preemptive sweep." *Ecuadorian Rainforest, LLC v. TForce Freight, Inc.*, Civ. A. No. 22-01856, 2022 WL 6967015, at *3 (D.N.J. Oct. 12, 2022). The court also noted "the Carmack Amendment preempts contract and non-contract claims alike." *Id. See also Krauss v. IRIS USA, Inc.*, Civ. A. No. 17-00778, 2017 WL 5624951, at *4 (E.D. Pa. Nov. 22, 2017) (noting "courts have consistently held that the Carmack Amendment preempts state law claims for damage to interstate shipments, such as negligence, breach of contract, and state consumer protection laws"); *Mrs. Ressler's Food Prods. v. KZY*

*Logistics, LLC*, Civ. A. No. 17-02013, 2017 WL 3868703, at *4 (D.N.J. Sept. 5, 2017) (concluding the Carmack Amendment preempted "any portion of [plaintiff's] claim that sounds in breach of contract or negligence"); *Usinor Steel Corp. v. Norfolk S. Corp.*, 308 F. Supp. 2d 510, 518 (D.N.J. 2004) (finding plaintiff's state law claims for negligence, breach of contract, conversion, and breach of bailment were all preempted by the Carmack Amendment); *Orlick v. J.D. Carton & Son, Inc.*, 144 F. Supp. 2d 337, 344–45 (D.N.J. 2001) (concluding the Carmack Amendment completely preempted plaintiffs' state law claims where plaintiffs alleged in their complaint "a cause of action against interstate carriers based on loss or damage to shipped goods"; and stating courts "have consistently held that the Carmack Amendment preempts state law under almost all circumstances"); *cf. Alpine Fresh, Inc. v. Jala Trucking Corp.*, 181 F. Supp. 3d 250, 256–57 (D.N.J. 2016) (concluding the Carmack Amendment did *not* preempt claims of negligence and breach of bailment where the product being transported was asparagus, which is exempt from Title 49 of the United States Code and is "exempt from regulation by the Federal Motor Carrier Safety Administration" but finding those claims otherwise preempted under the Interstate Commerce Commission Termination Act and the FAAAA and accordingly dismissing those claims).

However, while the Carmack Amendment applies to carriers, it does not apply to brokers. *See Bunis v. Masha Mobile Moving & Storage, LLC*, Civ. A. No. 23-01237, 2023 WL 3689984, at *4 (E.D. Pa. May 26, 2023). A "carrier" is defined as "a motor carrier, a water carrier, and a freight forwarder." 49 U.S.C. § 13102(3). A "broker," on the other hand, is defined as "a person, *other than a motor carrier* or an employee or agent of a motor carrier, that . . . offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2) (emphasis added). The term "person" includes individuals, corporations, companies, associations,

and others. *See* 1 U.S.C. § 1; 49 U.S.C. § 13102(18). Under the Carmack Amendment, "a carrier is liable for damages incurred during a shipment of goods, whereas a broker—someone who merely arranges for transportation—is not liable." *Tryg Ins. v. C.H. Robinson Worldwide, Inc.*, 767 F. App'x 284, 285 (3d Cir. 2019). Accordingly, the Carmack Amendment does not preempt state law claims against brokers. *See Pelletron Corp. v. C.H. Robinson Worldwide, Inc.*, Civ. A. No. 11-06944, 2012 WL 3104845, at *3 (E.D. Pa. July 31, 2012) (citing *Cont'l Cas. v. Quick Enters.*, Civ. A. No. 12-02351, 2012 WL 2522970, at *2 (D.N.J. June 29, 2012)); *see also Masha Mobile*, 2023 WL 3689984, at *3 (dismissing Carmack Amendment claim against a party because it was undisputed that party was an insurer and not a carrier, noting the Carmack Amendment only governs carriers); *Louis M. Marson Jr., Inc. v. All. Shippers, Inc.*, 438 F. Supp. 3d 326, 333–34, 337 (E.D. Pa. 2020) (denying summary judgment where the court concluded a genuine issue of material fact existed as to whether defendant acted as a broker or a carrier "with respect to [p]laintiff's July 21, 2018 shipment" and stating that the Carmack Amendment would not preempt plaintiff's breach of contract claim if the factfinder found defendant was a broker rather than a carrier with respect to that shipment); *Cont'l Cas.*, 2012 WL 2522970, at *2 (noting that courts who have considered whether the Carmack Amendment preempts state law claims asserted against brokers have "found that the Carmack Amendment does not preempt such claims").

Here, Plaintiff explicitly alleges "Saia was a 'carrier' of the shipment as defined in 49 U.S.C. § 13102(3)" and references Saia as being a "carrier" in several places in the FAC. (*See* ECF No. 4 ¶¶ 15–16, 19, 37.) Plaintiff further alleges Saia acknowledged receipt of the shipment of Plaintiff's spot-welding machine, picked up and transported the machine, and delivered the machine in damaged condition. (*See id.* ¶¶ 22, 26–27, 38–41; Ex. A (listing Saia as the "Carrier" on the Bill of Lading).) These allegations as to Saia could only be construed as alleging Saia was

a carrier, not a broker, for the shipment of Plaintiff's spot-welding machine. Therefore, the Carmack Amendment applies to Saia and accordingly preempts Plaintiff's state law claims of negligence, breach of warranty, negligent misrepresentation, promissory estoppel, breach of contract, breach of good faith and fair dealing, and tortious interference with contract because they all arise out of, and are related to, the alleged damage to Plaintiff's spot-welding machine that occurred during interstate transport.

The Court acknowledges certain independent claims "may coexist with a Carmack Amendment cause of action, including incidental costs for attorney's fees agreed upon by contract, and, in some instances, claims for the intentional infliction of emotional distress and outrage, provided such claims are grounded upon conduct that is truly independent from the delivery, loss, or damage to transported goods." *Kotick*, 2019 WL 5388163, at *5 n.6 (citations omitted). However, Plaintiff's state law claims do not fall within these exceptions. Rather, they only seek to recover for the damage to Plaintiff's spot-welding machine and claims related to and/or stemming from that damage—which claims fall within Carmack Amendment preemption. *See Lloyds of London*, 762 F.3d at 336 n.4.

Therefore, Saia's Motion is **GRANTED**, and Counts Two through Eight of Plaintiff's FAC are dismissed with prejudice as against Saia.[8] *See Inter Metals Grp. v. Centrans Marine Shipping*, Civ. A. No. 20-07424, 2022 WL 489404, at *4 (D.N.J. Feb. 17, 2022) (dismissing with prejudice

---

[8] Plaintiff states in its opposition to Saia's Motion that it did not negotiate or sign the Bill of Lading for the transport of its spot-welding machine and that it was not involved in the negotiations for the Bill of Lading. (ECF No. 17 at 1, 3, 10–11.) However, these facts are not alleged in the FAC and the Court is "bound by the allegations in the [c]omplaint" at the motion to dismiss stage. *See Hartford Fire Ins. Co. v. Dynamic Worldwide Logistics, Inc.*, Civ. A. No. 17-00553, 2017 WL 3868702, at *2 (D.N.J. Sept. 5, 2017). Additionally, even if these facts were alleged in the FAC, Plaintiff does not explain whether or how this would affect preemption under the Carmack Amendment.

plaintiff's state law claims against defendants who were carriers, brokers, and/or freight forwarders, finding that those claims were "preempted by both the Carmack Act and the FAAAA").

### ii.  FAAAA Preemption

Saia also argues even if Plaintiff's claims could survive the Carmack Amendment's preemptive scope, "they still would be preempted by the FAAAA[,]" which provides "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . broker, or freight forwarder with respect to the transportation of property." (ECF No. 8-1 at 7 (quoting 49 U.S.C. § 14501(c)(1)). Saia contends this Court has found that state common law claims fall under the "other provision having the force and effect of law" language in the FAAAA and therefore Plaintiff's state law claims are preempted by the FAAAA. (*Id.* (citing cases).)

In opposition, Plaintiff asserts its claims are not preempted by the FAAAA because the FAAA "does not preempt routine breach of contract claims" and does not preempt state laws that have an "indirect and tenuous effect on the price, route or service of carriers of interstate property[.]" (*Id.* at 13–14 (citing cases).) Plaintiff contends its state law claims "only have, at most, an indirect and tenuous effect on prices, routes and services" and "have no or minimal relation to carrier rates, routes or services"; therefore, its state law claims are not preempted by the FAAAA. (*Id.* at 14.)

Because the Court has determined Plaintiff's state law claims are preempted by the Carmack Amendment, the Court does not reach the parties' arguments regarding FAAAA preemption. The Court also does not reach the parties' arguments regarding the factual sufficiency of Plaintiff's state law claims with respect to Saia.

### iii.   Saia's Time to Answer Count One of the FAC

Saia does not seek to dismiss Count One of the FAC and states it "construes Local Civil Rule 12.2 to extend its deadline to Answer this remaining cause of action [to] until 14 days after the Court's ruling" on its partial motion to dismiss. (ECF No. 8-1 at 11.) But out of an abundance of caution, Saia requests the Court, to the extent required, "extend its deadline to Answer Count One of the Amended Complaint [to] until 14 days after the Court's ruling" on its motion. (*Id.*) Plaintiff opposes Saia's request and asserts "Saia's request to have additional time to file a supplemental 12(b)(6) motion should be rejected and denied." (ECF No. 17 at 14; *see also id.* at 14–15.) Saia responds that Plaintiff misconstrues its request and clarifies it "has not, as Plaintiff suggests, sought any extension of time to file a supplemental 12(b)(6) motion or any other motion" but rather clearly states its request is limited to the time for it to file its *Answer* to Count One of the FAC. (ECF No. 18 at 14 (emphasis added).) Saia contends Plaintiff's argument against its requested formal extension is therefore "wholly misplaced." (*Id.*)

Local Civil Rule 12.2 states:

> When a motion to dismiss pursuant to Fed. R. Civ. P. 12(b) addresses fewer than all of the claims for relief in a complaint, the pleading in response to any claims for relief which have not been dismissed shall be filed 14 days after entry of the Court's order resolving said motion to dismiss.

L. Civ. R. 12.2. "[T]he filing of a [Rule 12(b)] motion that only addresses part of a complaint suspends the time to respond to the entire complaint, not just to the claims that are the subject of the motion." *Fed. Contracting, Inc. v. United States*, Civ. A. No. 16-215C, 2016 WL 5408137 (Fed. Cl. Sept. 28, 2016); *see also Dillingham v. Garcia*, Civ. A. No. 18-00579, 2019 WL 6618055, at *8 (E.D. Cal. Dec. 5, 2019), *report and recommendation adopted*, 2020 WL 2520639 (E.D. Cal. May 18, 2020) ("Although it is unclear from the language of Rule 12(a) whether service of a Rule

12(b) motion directed at only parts of a pleading extends the time for answering the uncontested parts of the pleading, 'the weight of the limited authority on this point is to the effect that the filing of a motion that only addresses part of a complaint suspends the time to respond to the entire complaint, not just to the claims that are the subject of the motion.'" (quoting Charles A. Wright & Arthur Miller, 5B Fed. Prac. & Proc. Civ. ("Wright & Miller") § 1346 (3d ed. 2023))); *Iraheta v. Equifax Info. Servs., LLC*, Civ. A. No. 17-01363, 2018 WL 3381419, at *2 (W.D. La. July 10, 2018) ("[T]he Court sees no reason to depart from the majority rule that 'filing of a partial motion to dismiss extends the defendant's time to answer the entire complaint.'" (citing *Bertaut v. Par. of Jefferson*, Civ. A. No. 02-02104, 2002 WL 31528468, at *1 (E.D. La. Nov. 2, 2002))); *Cir. City Stores, Inc. v. Citgo Petroleum Corp.*, Civ. A. No. 92-07394, 1994 WL 483463, at *4 (E.D. Pa. Sept. 7, 1994) (agreeing with the court's reasoning in *Brocksopp Eng'g, Inc. v. Bach–Simpson, Ltd.*, 136 F.R.D. 485 (E.D. Wis. 1991), which "reasoned that, under the language of Fed. R. Civ. P. 12(a), a partial 12(b) motion enlarges the time to file an answer" and noting the opposite approach "had significant disadvantages in that it would require duplicative sets of pleadings in the event of denial of the 12(b) motion, and it would cause confusion over the proper scope of discovery during the motion's pendency" (citing *Brocksopp Eng'g*, 136 F.R.D. at 486–87)).

The Court agrees with Saia's reading of Local Civil Rule 12.2, and likewise agrees with the reasoning in the above-referenced line of cases, which reflects the majority view of courts who have addressed this issue. Accordingly, the Court concludes Saia's motion to dismiss only portions of Plaintiff's FAC suspends its obligation to answer Plaintiff's remaining causes of action not addressed by Saia's Motion. *See* Wright & Miller, § 1346 & n.18 (citing cases). For the avoidance of doubt, the Court grants Saia's request to formally extend the deadline for it to Answer Count One of the FAC to until fourteen (14) days after the Court's ruling on Saia's Motion.

### B.  Rock City's Motion to Dismiss

Rock City argues Plaintiff's FAC should be dismissed for failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 12-1.) Specifically, Rock City argues: (1) Plaintiff's state law claims (Counts Two through Eight) must be dismissed because they are preempted by the Carmack Amendment and the FAAAA, and (2) Plaintiff's Carmack Amendment claim (Count One) fails to state a claim against Rock City because Rock City is a broker, not a carrier, and as such is not subjected to liability under the Carmack Amendment. (*Id.* at 1, 3–12.)

In opposition, Plaintiff argues Rock City's Motion should be denied because (1) the FAC contains factual allegations supporting its state law claims; (2) Rock City cannot meet its "burden to show the affirmative defense of preemption should be applied"; and (3) its claims are not preempted by the Carmack Amendment or the FAAAA and "do not otherwise fail as a matter of law[.]" (ECF No. 16 at 1, 6–7.) Plaintiff contends it alleges Rock City "may have acted as both a broker and a carrier" and "mislead and confused Plaintiff as to who was the carrier or broker responsible for the shipment." (ECF No. 16 at 11, 15.) Plaintiff also asserts "Rock City was the sole communication with Plaintiff regarding the terms of the shipment and . . . assumed responsibility for the shipment in its representations to Plaintiff." (*Id.* at 17.)

In reply, Rock City maintains Plaintiff's claims against it must be dismissed because "the Carmack Amendment is the exclusive and lone cause of action Plaintiff can assert based on the factual allegations as pled." (ECF No. 19 at 5.) Rock City contends that even assuming, *arguendo*, the Carmack Amendment does not preempt Plaintiff's state law claims, the FAAAA preempts Plaintiff's non-contractual state law claims. (*Id.* at 7–9.) Rock City also argues Plaintiff never

alleges it to be a carrier and, at best, alleges it is a broker to whom Carmack Amendment liability does not apply. (*Id.* at 10.)

Here, Plaintiff has alleged facts in the FAC suggesting it is unclear whether Rock City was acting as a broker or a carrier for the shipment of Plaintiff's spot-welding machine, notwithstanding Rock City's arguments to the contrary. (*See, e.g.*, ECF No. 4 ¶¶ 17, 21, 39.) As explained above, the Carmack Amendment applies to carriers and preempts state law claims against a carrier for loss or damage to interstate shipments. *See Lloyds of London*, 762 F.3d at 336 (citation omitted). But the Carmack Amendment does not apply to brokers and "does not preempt state law claims against brokers." *Pelletron*, 2012 WL 3104845, at *3 (citing *Cont'l Cas.*, 2012 WL 2522970, at *2).

Determining whether an entity is a carrier or a broker for purposes of the Carmack Amendment is a fact-specific analysis. *Louis M. Marson*, 438 F. Supp. 3d at 332. "[I]n determining whether a party is a carrier or a broker, the crucial question is whether the party has legally bound itself to transport goods by accepting responsibility for ensuring the delivery of the goods." *Tryg Ins.*, 767 F. App'x at 286–87. "If an entity accepts responsibility for ensuring the delivery of goods, then that entity qualifies as a carrier regardless of whether it conducted the physical transportation." *Id.* at 287. "Conversely, if an entity merely agrees to locate and hire a third party to transport the goods, then it is acting as a broker." *Id.*

Here, Plaintiff alleges, among other things: (1) Rock City communicated with Plaintiff to facilitate and coordinate the interstate transport of Plaintiff's spot-welding machine (ECF No. 4 ¶¶ 12–19); (2) Rock City told Plaintiff "it would handle all aspects of the transportation contract" (*id.* ¶ 17); (3) Rock City, "[i]n consideration of certain freight charges paid or agreed to be paid by Plaintiff, . . . agreed [along with Saia] to transport the shipment to its destination in good order and

condition for delivery on June 16, 2022" (*id.* ¶ 39); and (4) Rock City "may have subcontracted and/or brokered the shipment to Defendant Priority1 thereby confusing Plaintiff as to who was acting as a 'carrier' of the shipment . . . and who was acting as a 'broker' of the shipment . . . ." (*id.* ¶ 21). Plaintiff's allegations, construed broadly, show Rock City could have been acting as either a carrier or a broker for the shipment of Plaintiff's spot-welding machine. Determining whether an entity is a carrier or a broker is a fact-specific inquiry inappropriate for resolving on a motion to dismiss. *See Louis M. Marson*, 438 F. Supp. 3d at 332. To the extent Rock City was acting as a carrier for the shipment of Plaintiff's spot-welding machine, the Carmack Amendment would apply and, as with Saia, would preempt Plaintiff's state law claims against Rock City. *See Lloyds of London*, 762 F.3d at 336 (citation omitted). However, to the extent Rock City was acting as a broker for the shipment of Plaintiff's spot-welding machine, which Rock City argues it was, while the Carmack Amendment would not apply, the FAAAA would apply and would similarly preempt certain of Plaintiff's state law claims.

Congress enacted the Interstate Commerce Commission Termination Act ("ICCTA") and the FAAAA "to preempt state regulation of the trucking industry." *Ressler's Food Prods.*, 2017 WL 3868703, at *2 (citing *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 367–68 (2008)). The parties do not make any arguments related to the ICCTA, so the Court solely addresses the parties' arguments with respect to FAAAA preemption.

The FAAAA's preemption provision provides:

> [A] State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier . . .) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

*Traction Tire, LLC v. Total Quality Logistics, LLC*, Civ. A. No. 19-05150, 2020 WL 6044179, at *6–7 (E.D. Pa. Oct. 13, 2020) (quoting 49 U.S.C. § 14501(c)(1)). "The FAAAA's preemption clause prohibits enforcement of state laws 'related to a price, route, or service of any motor carrier . . . with respect to the transportation of property.'" *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) (quoting 49 U.S.C. § 14501(c)(1)). "The Supreme Court in several decisions has provided guidance 'to "identify the domain expressly pre-empted"' by the FAAAA." *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 133 (3d Cir. 2018) (quoting *Pelkey*, 569 U.S. at 260). "First, the 'related to' language from the FAAAA preemption clause gives it a broad scope, encompassing any state actions that have 'a connection with, or [make] reference to . . . rates, routes, or services' of a motor carrier" and "covers any state law that has a connection with or refers to 'price[s], route[s], [or] service[s,]'" but this "does not mean the sky is the limit." *Bedoya v. Am. Eagle Express Inc.*, 914 F.3d 812, 819 (3d Cir. 2019) (alterations in original) (citations omitted). "Second, FAAAA preemption reaches laws that affect prices, routes, or services even if the effect 'is only indirect,'" and "[f]inally, preemption occurs where a state law has 'a "significant impact" on carrier rates, routes, or services.'" *Bedoya*, 914 F.3d at 819 (citations omitted).

"The scope of the federal preemption pursuant to the FAAAA is understood as having a 'broad preemptive purpose[.]'" *Lee v. Golf Transp., Inc.*, Civ. A. No. 21-01948, 2023 WL 7329523, at *7 (M.D. Pa. Nov. 7, 2023) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992)). "[C]onsidering the broad scope of the preemption clause, 'pre-emption may occur even if a state law's effect on rates, routes, or services "is only indirect."'" *Lupian*, 905 F.3d at 133 (quoting *Rowe*, 552 U.S. at 371). "Courts have even found that the FAAAA preempts not only state statutes and administrative regulations, but also state law-based private claims, such as negligence, conversion, and breach of bailment, because such claims fall under the 'other

provisions with the force of law' language of the provision." *Golf Transp.*, 2023 WL 7329523, at *7.

"On the other hand, the FAAAA itself, the Supreme Court, and the courts of appeals have identified laws that are too 'tenuous, remote, or peripheral' from carrier prices, routes, and services to trigger preemption." *Bedoya*, 914 F.3d at 820. For example, the Court has noted "the FAAAA does not preempt state or local zoning regulations, and state laws prohibiting prostitution, gambling, and 'obscene depictions' are too tenuous, remote, and peripheral to be preempted." *Lupian*, 905 F.3d at 133 (citations omitted). "Of particular relevance to the instant case, [the ICCTA and FAAAA] do not preempt routine breach-of-contract claims based on state law." *Ressler's Food Prods.*, 2017 WL 3868703, at *3. The Supreme Court "distinguished a breach-of-contract claim from other state-based tort claims because a breach-of-contract claim, by its very nature, does not allege a 'violation of state-imposed obligations' and, therefore, does not amount to 'a State's enact[ment] or enforce[ment] [of] any law, rule, regulation, standard, or other provision.'" *Id.* (alterations in original) (quoting *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228–29 (1995)). "[T]he FAAAA does not preempt routine breach of contract claims because they only seek enforcement of 'privately ordered obligations' and as such do not amount to state-imposed laws, rules, or other provision having the effect of law." *Siaci Saint Honore v. M/V MSC Maria Elena*, Civ. A. No. 21-01460, 2022 WL 16949013, at *3 (D.N.J. Nov. 14, 2022) (citing *Wolens*, 513 U.S. at 228–29, 233). *See, e.g.*, *Siaci Saint Honore v. M/V Lotus A*, Civ. A. No. 21-01907, 2022 WL 16949016, at *4–6 (D.N.J. Nov. 14, 2022) (concluding the FAAAA preempted plaintiff's state law-based claims of negligence, conversion, and breach of bailment); *AMG Res. Corp. v. Wooster Motor Ways, Inc.*, Civ. A. No. 15-03716, 2019 WL 192900, at *4 & n.7 (D.N.J. Jan. 14, 2019), *aff'd*, 796 F. App'x 96 (3d Cir. 2020) (finding the FAAAA and the ICCTA both

preempted plaintiff's state law claims of conversion, negligence, unjust enrichment, breach of the covenant of good faith and fair dealing, and violations of the New Jersey Consumer Fraud Act, but noting the "statutes' preemptive effects do not apply to routine, breach of contract claims"); *cf. Ciotola v. Star Transp. & Trucking, LLC*, 481 F. Supp. 3d 375, 380–81 (M.D. Pa. 2020) (concluding the FAAAA did not preempt plaintiff's state law claims of vicarious liability, negligent entrustment, negligent hiring/supervision/retention, and reckless hiring/supervision/ retention, finding that those tort law claims "[did] not significantly impact . . . prices, routes and services").

Here, even assuming *arguendo* that Rock City was acting as a broker for the transport of Plaintiff's spot-welding machine, and therefore  the Carmack Amendment does not apply to Rock City, the FAAAA would preempt Plaintiff's state law claims of negligence, breach of warranty, negligent misrepresentation, promissory estoppel, breach of good faith and fair dealing, and tortious interference with contract (Counts Two, Three, Four, Five, Seven, and Eight).[9] *See M/V Lotus A*, 2022 WL 16949016, at *4–6; *AMG Res. Corp.*, 2019 WL 192900, at *4 & n.7. However, the FAAAA would not preempt Plaintiff's breach of contract claim[10] (Count Six) against Rock City, which Rock City appears to concede. (*See* ECF No. 19 at 9); *M/V MSC Maria Elena*, 2022 WL 16949013, at *3; *Ressler's Food Prods.*, 2017 WL 3868703, at *3.

The Court finds it would be premature at this stage to dismiss the Carmack Amendment claim (Count One) against Rock City without allowing discovery to determine whether Rock City

---

[9] Because the Court finds these state-based causes of action are preempted either under the Carmack Amendment and/or the FAAAA, the Court does not reach a full analysis of these claims on their merits.

[10] Neither Plaintiff nor Rock City substantively briefed whether Plaintiff plausibly alleged facts supporting a breach of contract claim so the Court does not reach that analysis at this time.

was acting as a carrier (who could be subject to liability under the Carmack Amendment) or as a broker (who could be subject to liability under state law claims not preempted by the FAAAA). Therefore, Rock City's Motion is **GRANTED IN PART and DENIED IN PART**. Rock City's Motion is **GRANTED** as to Plaintiff's state law claims in Counts Two, Three, Four, Five, Seven, and Eight of the FAC as preempted by the Carmack Amendment and/or the FAAAA, and accordingly those claims are **DISMISSED WITHOUT PREJUDICE**. However, Rock City's Motion is **DENIED** as to Counts One and Six of the FAC.

## IV.   CONCLUSION

For the reasons set forth above, Saia's Partial Motion to Dismiss (ECF No. 8) is **GRANTED**, and Rock City's Motion to Dismiss (ECF No. 12) is **GRANTED IN PART and DENIED IN PART**. An appropriate Order follows.


*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  February 13, 2024